[No. 3,993.]

# A. J. STONE AND JAMES B. STONE *v.* PELEG BUMPUS AND E. D. BUMPUS.

WORKING MINING CLAIM.—It is not the province of a Court to question the judgment of the owner of a mining claim as to the manner in which he shall work the claim, so that the working does not interfere with prior rights acquired by others.

RIGHT OF OLDEST LOCATOR IN WORKING MINING CLAIMS: — The owner of a mining claim comprising the bed of a cañon may erect dams across the bed of the cañon for the purpose of enabling him to work the same, even if thereby mining claims on the banks of the cañon belonging to others are flooded, provided the claim in the bed of the cañon is the oldest location, and in such case the injury sustained by the owner of the bank claim is *damnum absque injuria.*

IDEM.—In such case a declaration of the owner of the cañon claim, before building the dam, that he will put in a dam that will flood the claim on the bank of the cañon, is consistent with the utility or necessity of the dam in working the cañon.

APPEAL from the District Court, Fourteenth Judicial District, County of Placer.

Indian Cañon is in the gold-bearing region of the Sierra Nevada Mountains, in Placer County, having its source at an altitude of about forty-five hundred feet above the level of the sea. It is several miles in length, and, at the place where the claims in dispute are located, is about one thousand feet in depth. The bed of the cañon contains gold-bearing earth; and on the summit of the mountains, on either side of the cañon, are gold placer claims, which are worked by washing the earth through flumes, in which the gold is collected, into the bed of the cañon. This earth, when it reaches the bed of the cañon, still contains gold, but ceases to be the property of the owner of the claim above. Several parties had, prior to 1850, located the bed of the cañon for a distance of more than three thousand feet, for the purpose of laying a flume in its bed, in which to work the gold-bearing earth which was washed from the

mountains above.    Defendant Bumpus had acquired by purchase the rights of these parties.    On the banks of the cañon were bars, which also contained gold; and, on the 10th day of September, 1866, the plaintiffs located one of these bars, on the side of Bumpus' claims, for the purpose of working it as a mining claim.    They immediately excavated a ditch, about three fourths of a mile in length from their claim, up the side of the mountain to a ravine, for the purpose of obtaining water to work the same.    The plaintiffs' claim could be worked in no other way than by washing the earth down the bed of the cañon.    The plaintiffs had done considerable work on their claim when, in February, 1867, the defendant Bumpus constructed a dam on his cañon claim across the bed of the cañon, at a place about seven hundred feet below the plaintiffs' claim, and thereby caused the water to flood the plaintiffs' claim, so that it could not be worked.    The cañon contained a large amount of tailings, which had covered up one flume, and Bumpus claimed that he could not work the same without constructing a dam which would stop the flow of the tailings, until he could wash away the tailings below the dam, and lay a flume on the bed rock, and then construct another dam higher up, and go through with the same process. This action was brought to abate the dam as a nuisance. On the trial the plaintiff, A. J. Stone, testified as follows:

"December 10th, 1866, first saw Bumpus.    He came to our cabin and asked us, who is working on that bar?    We said we were.    He said, did you not know that cañon has been bought and sold a dozen times, and that I own it?    He said he should sue us.    He then said he would not sue, but would put in a dam and make us sue.    Shortly after he came down again and said, what are you going to do about that claim down there?    I said, going to work it.    He said he would drive us off, and we should never work it.    He said

you shall never make a dollar out of it. We said, will you pay us for the work we have done? He said no; I did not hire you, and will not pay you. He said. he would put·in a dam that would flood us six feet deep with tailings. He said he thought Wilson had forbid us before. Wilson owned with Bumpus in the cañon. About the tenth of March he commenced putting in a dam across the cañon seven hundred and fifty feet below our claim. He felled trees across and made a dam seven feet high. It flooded the tailings back three feet deep on our claim. Could have worked our claim but for the dam. There was no natural outlet for our claim but the bed of the cañon. We could do no more ·work, and had to leave. There was an old flume below the dam in the cañon, but none opposite our claim."

On cross-examination Stone said: "Knew when we located our claims that Bumpus owned the bed of the cañon. Had known it for several years. His cañon claim extended from above our claims down the bed of the cañon below where he built the dam. We never owned or claimed to own any of the bed of the canon."

The defendant moved for a nonsuit, because "the evidence showed that when plaintiffs' claims were located the defendant owned, and had owned and possessed Indian Cañon, and that plaintiffs had never acquired the right to use the bed of the cañon to work their claims."

The other facts are stated in the opinion.

*Jo Hamilton,* for Appellants.

*C. A. Tuttle,* for Respondents.

By the Court, Niles, J. :

This case was once before this Court upon appeal, and is reported in 40 Cal. 428, and the judgment in favor of the plaintiff was then reversed and a new trial granted. Upon

the second trial a judgment of nonsuit was rendered against the plaintiff, and from this judgment and the order overruling plaintiff's motion for a new trial this appeal is taken.

In the former opinion (which is now the law of this case) it was said, that "to enable the plaintiffs to recover, it should have appeared at the trial: First, that the plaintiffs owned the ground claimed by them; second, that the dam prevented them from working it to advantage; third, alternatively, that the defendants had no title to the bed of the cañon, or if they had, that their right was acquired subsequent to that of the plaintiffs, or if prior, that the dam was not needed to enable the defendants to work to advantage."

There is no variance between the facts presented upon the former and the present appeal, material to the decision of the case. As then, the plaintiffs' ownership of the mining ground claimed by them, and that the dam erected by the defendant prevented the advantageous working of plaintiffs' ground, must be conceded. The title of the defendants to the bed of the cañon, and that the right of the defendant was prior to that of the plaintiffs, was admitted by the testimony of the plaintiff Stone, and was not contradicted by any other testimony. There was no testimony tending to show that the dam was not beneficial to defendant, or requisite to the advantageous working of his claims. The declaration of the defendant prior to the construction of the dam, that he would put in a dam that would flood the plaintiffs' claims, is entirely consistent with the necessity or utility of the structure in the working of the cañon. His subsequent testimony before the Justice of the Peace, that he had put in the dam to flood out the plaintiffs, was qualified by the additional declaration that it was constructed for the further purpose of working the cañon. It is not within the province of a Court to question the judgment of a property owner in the legitimate use of his property, or to determine whether one mode of use would be more beneficial than another.

It was clearly shown that the construction of dams by the owners of cañon claims for the purpose of working them, was authorized by local customs. This right being conceded, the damage that might be occasioned by such structure to a subsequent locator would be *damnum absque injuria*. Judgment and order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.